MINNESOTA ASSOCIATION OF PUBLIC SCHOOLS
AND OTHERS v. KENNETH HANSON AND OTHERS.

178 N. W. (2d) 846.

June 26, 1970—No. 42095.

*Feinberg, Mirviss, Meyers, Schumacher & Malmon* and *James J. Schumacher,* for appellants.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, *Douglas L. Skor,* Special Assistant Attorney General, and *Harlan L. Nelson,* County Attorney, for respondents.

NELSON, JUSTICE.

Appeal from a district court order granting defendants' motion to dismiss the complaint and from judgment entered thereon.

Plaintiffs initiated a declaratory judgment action on two counts seeking a declaration of unconstitutionality of L. 1967, c. 833 (Minn. St. 122.41 to 122.52) requiring that all school districts not maintaining classified elementary and secondary schools on July 1, 1970, be dissolved and attached to districts which do maintain such schools.

The first count, brought by the Minnesota Association of Public Schools (M. A. P. S.), alleges that c. 833 is unconstitutional because it violates (1) the requirement for a general and uniform system of public schools; (2) the prohibition against unreasonable classifications; and (3) the prohibition against es-

tablishment of religion. The second count, a class action brought on behalf of two groups of teachers, alleges that c. 833 violates the constitutional prohibition against impairment of contractual obligations.

Prior to filing their answer, defendants moved to dismiss both counts on the grounds (1) that there was a failure to state a claim upon which relief could be granted; (2) that there was a lack of a justiciable controversy; (3) that the action was premature; and (4) that plaintiffs lacked standing to maintain the action.

The trial court in its memorandum stated that it presumed defendants' motions were made pursuant to Rule 12.02, Rules of Civil Procedure, and were based on lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted. The court assumed that the motions could also be made pursuant to Rule 56.02 and that, although the motions were made for dismissal of the action, in effect the parties were seeking summary judgment on the merits. The trial court proceeded to grant defendants' motions to dismiss count one of the complaint on the grounds of the absence of a justiciable controversy resulting in lack of jurisdiction of the subject matter. However, the court proceeded to rule on the merits and upheld the constitutionality of c. 833. The trial court also ruled on the merits of count two of the complaint and granted defendants' motion to dismiss on the grounds that there was no impairment of the teachers' contract and thus no justiciable controversy. This appeal followed.

The complaint indicates that M. A. P. S. is a nonprofit corporation consisting of members and representatives of school boards of public schools within the state. Its stated purpose is "to develop, strengthen and correlate the work of the school boards of the public schools of the State of Minnesota in their efforts to promote the educational interests of the children of the State of Minnesota."

The complaint is based on the existence of c. 833, § 8 (Minn. St. 122.48), which provides:

"Sections 122.41 to 122.46 shall not apply to any school district or unorganized territory in which is located any existing private school maintaining elementary and secondary education for 75 percent of the eligible pupils within the district or territory and complying with the requirements of Minnesota Statutes, Section 120.10, Subdivision 2."

Plaintiffs claim that the foregoing section violates the equal protection clauses of the United States Constitution and the Minnesota Constitution by making an unreasonable classification of the schools, persons, and properties affected by the law, thereby denying to the pupils in the excepted districts the benefits of better educational opportunities and a more equitable distribution of public school revenue if they do not choose to attend private or parochial schools in their school district.

■ The first issue is whether M. A. P. S. has an interest in c. 833 such as to show a justiciable controversy which would permit it to challenge the constitutionality of the compulsory school consolidation law in a declaratory judgment action.

Minn. St. 555.02 of the Declaratory Judgments Act provides:

"Any person interested under a * * * written contract * * * or whose rights * * * or other legal relations are affected by a statute * * * may have determined any question of construction or validity arising under the instrument, statute, * * * and obtain a declaration of rights, status, or other legal relations thereunder."

It is a well-established rule in this state that a court has no jurisdiction to render a declaratory judgment in the absence of a justiciable controversy. State ex rel. Smith v. Haveland, 223 Minn. 89, 25 N. W. (2d) 474, 174 A. L. R. 544; County Bd. of Education v. Borgen, 192 Minn. 512, 257 N. W. 92; Hassler v. Engberg, 233 Minn. 487, 48 N. W. (2d) 343; Seiz v. Citizens Pure

Ice Co. 207 Minn. 277, 290 N. W. 802. We stated in the Seiz case (207 Minn. 281, 290 N. W. 804):

"Proceedings for a declaratory judgment must be based on an actual controversy. The controversy must be justiciable in the sense that it involves definite and concrete assertions of right and the contest thereof touching the legal relations of parties having adverse interests in the matter with respect to which the declaration is sought, and must admit of specific relief by a decree or judgment of a specific character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

■ A party challenging the constitutionality of a statute must show that it affects his rights in an unconstitutional manner and not merely the rights of others. It is not sufficient that he suffers in some indefinite way in common with people generally. Lott v. Davidson, 261 Minn. 130, 109 N. W. (2d) 336; Mesaba Loan Co. v. Sher, 203 Minn. 589, 282 N. W. 823.

In the instant case M. A. P. S. asserts only those rights which belong to the pupils. As the trial court's memorandum points out, M. A. P. S. cannot gain status to challenge the constitutionality of legislation affecting school boards merely by asserting that it is interested in the development, strengthening, and correlation of work of such school boards to promote educational interests of children, because the purpose of M. A. P. S. is not to promote the interests of the children but to assist the school boards "in their efforts" to promote the educational interests of the children. This interest in good schools is not dissimilar to that of any other member of the general public. Thus, M. A. P. S. itself possesses no legal interest which has been or is about to be affected in a prejudicial manner.

Alternatively, if it is contended that the interest of M. A. P. S. is different from that of the public, it must necessarily identify itself with the interest of its school board members. Then, however, M. A. P. S. would lack standing to challenge this legislation

on the grounds that a school district, as a quasi-municipal corporation created by statute and enjoying only the rights conferred upon it by the legislature, may not challenge the constitutionality of a statute with the avowed purpose of modifying, dissolving, and/or expanding various school districts. See, Kramer v. County of Renville, 144 Minn. 195, 175 N. W. 101; Independent School Dist. No. 581 v. Mattheis, 275 Minn. 383, 147 N. W. (2d) 374.

We conclude, therefore, that no justiciable controversy exists between plaintiff corporation and defendants, and we must affirm the trial court's dismissal of the first count of the complaint on the grounds of lack of jurisdiction over the subject matter.

It is incumbent upon us to mention that our refusal to consider the merits of c. 833 will not result in a crucial delay of such consideration since c. 833, § 12, provides for severability of all the provisions of the act. Thus, if c. 833, § 8, were held invalid subsequent to July 1, 1970, no proceedings under the balance of c. 833 would have to be terminated. If and when § 8 were determined to be invalid, it would only be necessary to commence consolidation proceedings for those districts which, up to that time, were excepted by § 8.

■ The second count of this declaratory judgment action is prosecuted by two classes of teachers. The first class consists of those teachers who are qualified to teach in ungraded schools only. When consolidation is completed pursuant to c. 833, there will remain few, if any ungraded schools, resulting in a drastic reduction or elimination of teaching positions open to these teachers. The second class includes teachers who have continuing contracts and are qualified to teach in any elementary school and who allege that teaching positions may not be open to them because of the inevitable decrease in the number of such positions.

L. 1967, c. 833, § 6 (Minn. St. 122.46, subd. 2), provides as follows:

"Continuing contract teachers on the staffs of participating

districts shall be retained on the staff of the consolidated districts in positions for which they are qualified under state law and existing board standards to the extent that such positions still exist."

This same provision appears in a 1967 amendment to the Minnesota teacher tenure law, L. 1967, c. 890, § 1 (Minn. St. 125.12, subd. 6[e]), which provides that a school board may terminate a continuing contract of a teacher on the following ground, among others:

"Discontinuance of position, lack of pupils, or merger of classes caused by consolidation of districts or otherwise, provided that in the event of a consolidation of school districts, continuing-contract teachers on the staffs of participating districts shall be retained on the staff of the consolidated district in positions for which they are qualified under state law and state board regulations to the extent that such positions exist."

Plaintiff teachers assert that teaching contracts entered into by them prior to 1967 with their respective common school districts include by implication Minn. St. 1965, § 125.12, subd. 3, of the teacher tenure law, which was in effect prior to the 1967 amendment and which provided generally that the teacher's contract shall remain "in full force and effect, except as modified by mutual consent of the board and the teacher, until terminated by a majority roll call vote of the full membership of the board * * *." Plaintiffs contend that the enactment of c. 833 operates to nullify the provisions of the aforesaid subd. 3. They also argue that subd. 6(e) of the current teacher tenure act is not applicable to their contracts currently in force, since subd. 6(e) was not inserted in the act until 1967, and plaintiffs were hired and obtained tenure before this 1967 amendment was adopted. In other words, the teachers claim that they have continuing contracts existing prior to the enactment of c. 833, that their contracts could not be terminated or modified except in accordance with procedures existing under the old § 125.12, subd.

3, and that the adoption of c. 833 impairs their contracts with reference to termination. It should be noted that plaintiff teachers seem to be in dispute with the 1967 amendment to the teacher tenure law rather than with c. 833, even though the legal challenge is directed toward the latter act. Normally, we would not discuss issues which are not properly before us. However, in this situation, our decision might be more clear if the discussion makes reference to the teacher tenure law as well as to c. 833.

It is our understanding that the resolution of the issue of whether or not a particular statute unconstitutionally impairs contracts requires consideration of three separate questions: (1) Are the rights in question contractual? (2) What is the nature of the impairment of these rights, if any? (3) Is the impairment unconstitutional?

The teacher tenure law clearly provides that a teacher, having completed his or her probationary period in any school district, has a continuing contract with such district which remains in full force and effect unless and until terminated in accordance with the statute. Minn. St. 125.12, subd. 4. In addition, the United States Supreme Court in Indiana ex rel. Anderson v. Brand, 303 U. S. 95, 58 S. Ct. 443, 82 L. ed. 685, held that an Indiana law creating teacher tenure, very similar to the Minnesota law, resulted in the creation of contractual rights. Therefore, it is clear that § 125.12 results in a contractual relationship · between teacher and school district which may not be constitutionally impaired.

However, we fail to see any impairment of plaintiffs' contracts resulting from the enactment of c. 833. Section 125.12 relates to all school districts and is not limited in its application to those districts affected by c. 833. There still exists statutory authority for school boards to dismiss teachers "for cause." Minn. St. 123.14, subd. 4, and 123.35, subd. 5. This language can only be read to include the power to dismiss teachers for lack of teaching positions due to consolidation of school districts. Further, the 1967 amendment contains substantially the same

language as the former law except that it enumerates the grounds which justify termination. Thus, the teachers who will be affected by the enactment of c. 833 will be treated no differently than they would if they were in any other district which did not have a position available. If a school were closed by a district, or if the number of pupils were reduced so that the services of a teacher were no longer necessary, termination of employment was justified even before the adoption of c. 833. See, State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544.

In addition, the affected teachers will not be denied due process of law. There is nothing in c. 833 which provides that school boards may refuse to hire these teachers without following the normal procedures for dismissal. The board of each district to which another district is attached will in fact have to decide which teachers are not qualified and will not be retained and then notify them of that fact. Pursuant to § 125.12, the teachers then have the right of reviewing the action of the school board at a hearing and the right of appeal to the courts. In this respect, there is no difference between consolidation under c. 833 and voluntary consolidation under other provisions of law.

All contracts of tenure teachers must be construed to incorporate the provisions of the tenure statute in effect not at the time the teachers obtained tenure but at the time their contracts were negotiated and signed. Many of these contracts specifically incorporate the current provisions of the tenure law. Those contracts which do not expressly incorporate the provisions of the tenure act we deem to impliedly incorporate such provisions, including all amendments to the act as they are made. Thus, either by express or implied incorporation, teacher contracts are controlled by Minn. St. 125.12, subd. 6(e). See, Bragg v. Swarthmore School Dist. 337 Pa. 363, 11 A. (2d) 152; Annotation, 147 A. L. R. 293, 297; 47 Am. Jur., Schools, § 128. If the legislature had intended to exempt from the amendment teachers whose tenure had been acquired prior to such amendment, it would have

included a savings clause in the amendatory act. See, generally, Annotation, 147 A. L. R. 293, 297. No such clause is included in our statute.

Plaintiffs rely heavily on Indiana ex rel. Anderson v. Brand, *supra.* There it was held that a statute which removed township school corporations from the provisions of the teacher tenure law, thereby enabling these schools to dismiss teachers contrary to the terms of the tenure act, was an unconstitutional impairment of contract. The Brand case is distinguishable in at least two ways. The presence, either express or implied, of the provision in every continuing contract enabling the school board to terminate the contract pursuant to §§ 125.12, subd. 4, and 125.12, subd. 6(e), refutes the allegation that c. 833 impairs the obligations of existing contracts between teachers and school boards. By the terms of the contract, the board does not have an obligation to retain the teacher unless a position is available for which he or she is qualified. Although a similar provision existed in the Indiana act, it did not form part of the continuing contract, since township school corporations were removed from the provisions of the tenure act by an amendment. Further, a school board's obligation to provide the teacher with notice of intent not to retain him and with the opportunity for a hearing was necessarily removed by the repeal of the tenure act in Indiana. This procedure is still present in the Minnesota act and, as seen above, c. 833 did nothing to change this. We thus hold that c. 833 does not impair the contract rights of plaintiff teachers.

Even assuming that this court were to decide that c. 833 does constitute an impairment of contracts, it is still necessary to determine whether or not such impairment reaches unconstitutional proportions. Though a vested contractual right has been acquired by a teacher under a tenure statute, such a private right is held to be subject to a proper exercise of the police power of the state—the power of the state to impose restraints upon private rights when necessary for the betterment of the general welfare. Indiana ex rel. Anderson v. Brand, *supra;* Blaisdell v.

Home Bldg. & Loan Assn. 189 Minn. 422, 249 N. W. 334, affirmed, 290 U. S. 398, 54 S. Ct. 231, 78 L. ed. 413; 47 Am. Jur., Schools, § 128.

Chapter 833 was enacted pursuant to the police power of the state. Its purpose is stated in § 1 (Minn. St. 122.41):

"It is hereby declared to be the policy of the state to encourage the reorganization of school districts into such local units of administration as will afford better educational opportunities for all pupils, make possible a more economical and efficient operation of the schools and insure a more equitable distribution of public school revenue. * * *"

In order to achieve a system which would conform to this policy, the legislature exercised its absolute right to abolish or modify existing school districts. See, Kramer v. County of Renville, *supra;* In re Certain School Districts, Freeborn County, 246 Minn. 96, 74 N. W. (2d) 410. It did so to promote the educational interests of the state.

Since the legislature has the sole jurisdiction to dissolve or modify a school district, the fact that such modification or dissolution necessitates the termination of a teacher's contract does not make c. 833 an unreasonable means to the end which is sought to be accomplished. This court has recognized that although the teacher tenure law has the direct effect of rewarding qualified teachers with job security and minimizing the role that malice or political or partisan feelings might play in the hiring and dismissing of teachers (McSherry v. City of St. Paul, 202 Minn. 102, 277 N. W. 541), the tenure law was enacted primarily for the benefit and advantage of the public school system of the state. Frisk v. Board of Education of City of Duluth, 246 Minn. 366, 75 N. W. (2d) 504. As we stated in State ex rel. Ging v. Board of Education, 213 Minn. 550, 574, 7 N. W. (2d) 544, 557:

"Our teachers should be the first to recognize that the tenure law was not intended as a guarantee of continuous employment

during good health and good behavior, regardless of whether the number of pupils or the availability of positions justifies their continued retention."

The functioning of the police power in the Brand case must be distinguished from its use in the instant case. In Brand, there was no design being implemented for consolidation. School districts were not only being dissolved but were being withdrawn altogether from provisions of the tenure law. Thus, the police power was not exercised for the same purposes as in the instant case.

This court has considered the relationship between the teacher tenure law and the prohibition against impairment of contractual obligation on one previous occasion. In Doyle v. City of St. Paul, 206 Minn. 542, 289 N. W. 784, affirmed, 310 U. S. 615, 60 S. Ct. 1102, 84 L. ed. 1391, it was held that a reduction of a teacher's salary by a city ordinance did not result in an impairment of contract. Although the Doyle case is not directly on point, it does recognize the legislature's authority to alter teachers' rights if it is in the public interest.[1]

We conclude that the lower court was correct in ruling that no justiciable controversy exists between plaintiff teachers and defendants on the grounds that no unconstitutional impairment of contractual rights exists.

Affirmed.

---

[1] For a general coverage of the topic of teacher tenure laws, see Annotation, 100 A. L. R. (2d) 1141; Annotation, 147 A. L. R. 293; 47 Am. Jur., Schools, §§ 127 to 140.